Case number 21-1229, Operating Engineers Local 324 et al. v. Rieth-Riley Construction Company, Incorporated. Oral argument not to exceed 15 minutes per side. Mr. Levin for the appellants. Good afternoon, your honors. May it please the court, my name is Dan Levin and I represent the plaintiff appellants, the Operating Engineers Local 324 fringe benefit funds. As you know, this case involves an ERISA jurisdiction case, whether there is ERISA jurisdiction for my client's collection action brought against the defendant employer. The action sought to compel an audit of the employer's records and to compel any contribution shortfalls discovered in the audit. The lower court held that the National Labor Relations Board had exclusive jurisdiction over the fund's claim and dismissed the action for lack of jurisdiction. We believe there is ERISA jurisdiction under the facts of this case and we believe the lower court erred in finding the NLRB had exclusive jurisdiction. And one really big, one significant error of the lower court is it's finding that the funds are already pursuing a claim for contributions against Rieth-Riley before the NLRB. That was simply incorrect. There was an ongoing trial that was going on involving National Labor Relations claims. It involved the union, which is separate and distinct from the funds, and Rieth-Riley, but the fund was not a party to that case. The fund was not pursuing contributions. There was no claim in that case for delinquent contributions or that could have resulted in the fund receiving contributions. So, counsel, one question. If we agree with you that the existence of the collective bargaining agreement is not jurisdictional, would we have to remand for further considerations or would we be able, as an appellate court, to address remaining issues on this record? I think there would need to be a remand for the audit to occur. And the audit would need to take place to determine whether there are contribution shortfalls or claims contribution shortfalls and what they are. And then the issue would go before the court. Is there any more discovery that would be needed on the question of whether there's an agreement or not? I believe discovery had cut off in the district court, so I don't think there's any more discovery to do. I guess my question and my kind of broad view of this case is I'm not sure there's a jurisdictional question here, given what we've said, you know, given how the Supreme Court has interpreted jurisdiction. We've got cases out there that kind of talk about the existence of an agreement not being jurisdictional. But I don't know that I disagree with the district court's ultimate finding that there's no agreement. And so I don't know. That would become a merits question, right? I think it does play into the jurisdictional question. If you look at the primary Sixth Circuit cases on point, there's the Benke case and the Bricklayer's case and BIA Mechanical. And those cases do look at, is there some type of a promise to make contributions that occurred after the expiration of a collective bargaining agreement? And if the courts find that there is some independent promise to make contributions. But I'm saying, I guess I'm making your argument for you. I don't know. But on the face of your complaint, you're invoking a contract. It's a contract theory. You're not invoking the labor, you know, the NORA or anything. You're suing under a contract. It seems to me that federal courts have jurisdiction over a contract action. But if there's no contract, then your claims just fail, right? So what I'm wondering is whether there was no 12B6 motion, right? There's no motion to dismiss. There's no Rule 56. The merits are not in front of us, I take it? Or could we get to the merits because there's no discovery that would have to be done? You wouldn't be prejudiced by it? No, I don't think this court would get to the merits. I believe the defendants brought this purely as a motion to dismiss based on jurisdiction. And we believe the allegations in the complaint are sufficient for the court to impose jurisdiction to compel the audit under the case law. And that's one of my next points I wanted to make was on the advanced lightweight case. The advanced lightweight, which says the NLRB has exclusive jurisdiction, and that was the basis for the defendants, their position and the lower court's position, advanced lightweight, that implies when the employer refuses to pay contributions after expiration and denies it has an obligation and the union or the fund is saying you have an obligation under the National Labor Relations Act to pay. In that case, the jurisdiction is before the board. But this case is different because there's no dispute over the post-expiration obligation to pay. The employer is paying, and the employer, it's undisputed, executed repeatedly these certifications, fringe benefit reports, pursuant to which they specifically agreed to comply with the fringe benefit provisions of the collective bargaining agreement and with the fund's trust agreements, and the trust agreements. But you only decided to start to accept the contributions under the statutory theory, right? I mean, when they were proffering a contractual theory, you weren't accepting the contributions, right? At the point that the fund was not accepting, that was a situation where the union, which is an independent entity, said it is no longer going to bargain on a multi-employer basis through MIDA on behalf of Ruth Riley. And the union was saying basically this relationship is done. Ruth Riley did want its contributions to be accepted. That went on for about four months, but that was under really what was a misunderstanding, a mistake of fact by all parties, believing that it had this ADEF relationship that would allow a bargaining party to proceed. Do you agree that there has to be a meeting of the minds in order for there to be a contract, a labor contract? As a general principle, but I think as it relates to this case law regarding an ERISA fund's ability to make contributions, all the cases look at whether the employer promised and agreed to go forward. And in this case, I mean, generally you need it, but here the union, after Ruth Riley discovered this old agreement that said it had a 9A relationship, I mean, it was like a 30-year-old agreement is my understanding, the union said, okay, well, we'll accept that, and the contributions can be accepted, and from that point forward, the contributions were paid, the fund accepted them, and the union had no objections. So I think the consent of the union and the fund at that point was it was implicit by its actions in accepting the contributions, allowing the benefits to accrue, and paying benefits out. There's just no objection by the fund. And it's our position that that four-month period, the union's conduct, it was based on a mistake of fact, and it really isn't relevant to show that there's no intent to allow these contributions to come in. And I think it's really, when you look at the cases, the Benkey, the B&B Mechanical, those cases do look at whether there were promises after the collective bargaining agreement. And these certifications were, they could not be more clear promises by the employer to agree with the fringe benefit provisions of the CBA and the trust agreement, and the trust agreement provides for the audit. So to the extent that the Sixth Circuit cases do appear to look for some type of evidence of an agreement after the expiration of the bargaining agreement. But we've got, I mean, we've got some of those cases, we've got interim agreements, you actually have signed agreements where they're agreeing to continue the contributions. You don't have that here. I'm just, I'm struggling with where the meeting of the minds was here. I mean, if the, it seems to me the moving action was the 9A discovery, whatever it is. It's odd, I mean, that it happened when it did, but okay, so it happens. I mean, I don't know how you can ignore that. That's the line, it seems to me, and that seems to take away any contract theory. I think ERISA creates a special category of cases, and the cases say it's because ERISA has specific policies behind it. Those are to ensure that benefits are paid, that pensions are protected, that funds have, that it makes it easy for funds to collect contributions. And I think it creates a situation where it does loosen up some of the normal rules that would apply. And I think under the cases in this type of a situation, this is just the type of situation where the fund may proceed. It's consistent with the ERISA policy. And I mean, this fund, as these contributions come in, there are participants and beneficiaries whose benefits are accruing. They're accruing over time. The fund is becoming obligated to pay those out. And the fund and the trustees have an obligation to ensure that those contributions are coming in. And to do that, that's part of the audit procedure and the collection procedure. And that really gets to the Supreme Court decision that provides for the audit right, the central transport case. And central transport talks about the fund's obligations, the trustees' obligations to do what's necessary to ensure the contributions are coming in. And that case is similar to this. The employer approves some records for an audit, but not all of them. And the Supreme Court said that it is permissible for the fund to go forward to that audit. The employer said, well, we only had to produce records for the employers we are contributing for. But the fund said we need to look at additional records to make sure you're contributing for everyone. And the court said it's important that the fund be able to do this. It's important to avoid potential unfunded liabilities. You could have a situation where there are employees working, several years go by, contributions are not being made, and the employer comes to the fund and says, you know, I'm entitled to my benefits. I worked these hours. I'm entitled to this pension. And the fund would say, well, we didn't get contributions, so it's not funded. But the fund still has to pay for those. And the Supreme Court talked about, well, yeah, the fund could go back to the employer and try to collect the contributions at that point, but an employer can go out of business. And there's a potential for unfunded liabilities. And that's why the audit right and the audit procedure is so important. Counsel, at this point, what is the ruling that you would like from this court? Reversal and a remand to proceed to allow the audit to occur. So if we decide that there is subject matter jurisdiction and the payments are being made or required pursuant to the NLRB, there still would be a dispute that would have to be resolved in terms of disagreements between the parties as to how much money should be, is owed or should be paid over. Is that right? That could be true, depending on what the audit finds and specific what, if there is a shortfall, what the fund claims it is. And at that point, there may be an issue or dispute between Ruth Riley and the fund as to the nature of that shortfall and where that obligation comes from. And that, I assume that would need to go to the district court at that point after the audit. All right. All right. Thank you very much. Thank you. Your Honors, my name is Phil Gutwein, along with my co-counsel, Emily Kyle Maxwell. I represent Ruth Riley Construction. Thank you for hearing us today. This is an unusual case, but it's not a complicated case. For the court to resolve this appeal, the issues it has to address are few and they are narrow. This case is about one question, just one. After the collective bargaining agreement between Ruth Riley and Local 324 was affirmatively terminated by the parties, was the source of Ruth Riley's contribution obligation to the funds statutory or was it contractual? It is black-letter law that if it was statutory, that is, if it flowed exclusively from Ruth Riley having a 9A relationship with Local 324 and as a result having a statutory status quo obligation to continue making contributions, there is not jurisdiction. And there are no fewer than two Supreme Court cases for that point of law. If, on the other hand, it was contractual, if after the termination of that collective bargaining agreement, by mutual assent, Ruth Riley with Local 324 or the funds reached terms on a new agreement that obligated Ruth Riley to make contributions, then the court would have jurisdiction. I just don't see how this is a jurisdictional question. I mean, I don't see under, I don't think advanced lightweight gets you all the way there. We've got cases like Daft v. Advest, Winnett, Tackett, where we're talking about the existence of agreements not being jurisdictional. Why is this case any different than any of those? I mean, I understand it's a slightly different provision, but why is it not like those? It's because in this case, the jurisdictional predicate is distinct in every respect from the merits analysis. And so in this case, the existence of a contract, the source of Ruth Riley's contribution obligation, has nothing to do with the merits that the fund is seeking. So whether the source of that obligation is statutory or contractual doesn't have anything to do, for example, with the scope of the fund's audit right, what records they could compel. It doesn't have anything to do with whether Ruth Riley made exactly the right amount of contributions, whether it contributed too much or too little. You don't have to reach any of that to deal with the jurisdictional predicate, which is this single, straightforward, threshold question of whether the source of the contribution obligation... But if they're bringing a breach of, if they're essentially bringing a breach of contract case and we say, okay, we have jurisdiction over that, it's a breach of contract case, but there's no contract, so they just lose, right? Don't you just win on the merits at that point? Well, we don't get to the merits, Your Honor, because if there is no contract in this case, there is no jurisdiction. And it's for the reason that I'm trying to describe. The merits question and the source of jurisdiction are separate in this case. And so it is a precursor for the court to decide that it has jurisdiction because there has to be some source of the obligation, and for there to be jurisdiction, the source has to be a contract. If there's not a contract in place, there is no basis for the court to hear the merits. It's different from a case like Gwinnett. In a case like that, whether there is a contract obligation is exactly the same question the court has to address to decide if there's a claim that's viable. The merits in the jurisdictional question are identical. It's the same thing like safe air for everyone. Counsel, let me ask. Doesn't the collective bonding agreement reference the payments or require the payments? And even though that's expired, the only thing the National Labor Relations Act would require is that the payments continue in the absence of the CDA. Is that right? Yes, that's correct, Your Honor. So the source of the payment obligation, at least at the outset, was the collective bonding agreement. And the National Labor Relations Act only provides for continuation after the expiration until something else is worked out. So there's no clear separation between the contractual requirements or agreement and this provision in the labor law that after expiration the payments continue. I say that to say it's not quite so simple as to say that because the agreement has expired, the agreement doesn't have anything to do with or any source in the parties' obligations to one another, which relates to the jurisdictional issue such that we do have a contractual matter here that doesn't have to be disposed of under the labor law. Your Honor, the cases actually come out differently on that very point. So you're making an argument that many plaintiffs have made to try and find jurisdiction under both the LMRA and ERISA. And it's this idea that if there is a statutory status quo obligation that the contract retains independent contractual force for the purpose of helping the parties discharge that status obligation. That's not actually what the cases hold, though. Once the contract has expired and the statutory obligation has commenced, the contract no longer has force as a contract. It simply serves the purpose of defining the statutory obligation. The Supreme Court expressly recognized this in Lytton Financial and it drew from the Second Circuit's decision in Derrico, which contains an extensive analysis of exactly that point. The contract no longer has any force as a contract. It simply provides what the parties' obligations are as a statutory status quo matter. And that actually leads me to what I believe is the single most salient point in this case. There's one fact and one fact only, really, that the Court needs to take into account. And I'm going to read it from the fund's own brief to this Court, their opening brief on appeal. This is a fact that we raised to the District Court. It's a fact that the funds didn't dispute in the District Court. And it's a fact that the funds have said they agree with to this Court. Following termination of the CBA, defendant continued sending monetary contributions to the funds in accordance with its statutory obligations under Section 9A of the National Labor Relations Act. That's docket 22 in this Court, page 16 in the file. That is all you need to know. And the reason is because statutory obligations and contractual obligations are mutually exclusive. When you have a 9A relationship between an employer and a union, they have a statutory obligation to bargain for a contract. Think about what that means, to bargain for a contract. It's a statutory obligation that arises only when the parties don't have a contract. And when they're under that obligation to bargain for a contract, they have a statutory obligation to maintain the status quo. Let me ask you this. I assume that both parties agree that the payments had to continue upon expiration of the collective bargaining agreement. And if that's the case, then the problem would be, or at least in this case, there seems to be a lack of certainty as to the amount to be paid. Otherwise, there wouldn't be a need for the audit that you keep referring to. And that means the source from which the amount is to be determined that's required to be paid would be the collective bargaining agreement. So we can't say that that's inoperable, that the agreement is not of any import here. We're not trying to decide a jurisdictional issue. The amount required to be paid would be contractual in nature, would it not? No, it wouldn't, Your Honor. The contract has no force and effect after it's expired. How would you find out what the amount of the required payment would be if you didn't have the agreement to refer to? It comes from the agreement, but as a matter of statute, not contract. Well, if the agreement didn't exist, no payment obligation would exist. And if you have to determine the payment amount, the only source for that is the agreement. That's right, actually, Your Honor. I think there's a very helpful discussion on exactly this point on the last page of the Supreme Court's decision in advanced lightweight. And so the funds in that case made very similar policy arguments to what the funds are making here, that ERISA is a preferred remedy if we can't enforce the collective bargaining agreement as a matter of contract after it's expired, we lose certain rights that are important to us as trustees. And what the court said is, tough luck, that but for labor law, but for the National Labor Relations Act, after that contract expired, because it has no force on its own, you would have no remedy whatsoever. So the only reason we get to look at the contract for the purpose of defining what obligations exist today is because National Labor Relations law requires the parties to do it as a matter of statute, not because the contract has any force as a contract. Weren't the facts of advanced lightweight different in that there are the payments? Here, payments are continuing. In that case, payments have stopped, and there was an ERISA suit wherein the NLRA had jurisdiction, so the facts there were somewhat different, weren't they? They're not different in a way that matters, Your Honor. So the basic fact is exactly the same. The collective bargaining agreement that had created the contractual obligation terminated. And the question was, after the termination of that collective bargaining agreement, did the employer make the contributions that were required as its statutory status quo obligation? In that case, the employer made no contribution, and so the question would have been, was it obligated to do something? Was it in breach of its statutory status quo obligation? Here, the question is different. In meeting out its statutory obligation, did Ruth Riley make the amount of contributions that was required? I don't see in advanced lightweight, there was no theory that there was a contract, right? That they would have had to make payments under a contract. I mean, I take it the theory here is that there's some, yes, there's a statutory obligation, but there's also some implicit contract meeting of the minds that was separate than the statutory obligation and that you were paying pursuant to that contract, and so they want an audit, you know, as essentially you're breaching that contract, right? I mean, that's their theory. I don't know that it's a good one because I think it's premised on the existence of this contract, and the district court said no, but I still don't understand why advanced lightweight means there's no jurisdiction here. I mean, I don't think the Supreme Court addressed this particular scenario where someone is saying, well, there's an implicit agreement, or we implicitly agree to extend the CBA, right, or whatever it is. I mean, you agree that you could sign an interim agreement, right? I mean, there could have been some interim agreement signed, so they're just saying there was an interim agreement. It just wasn't a signed document the way you find in some of the other cases. Yes, that's right, Your Honor, but the law allows us to bring a factual attack on the court's jurisdiction, which we did, and so we presented evidence to the district court. The funds presented evidence to the district court. But don't you win the case either way? I just don't understand. I mean, why? It just seems odd to me that we're calling this jurisdictional when we have Arbaugh and we have Daft and we have Tackett, Winnett. We have all these cases that suggest that we have to be really careful before we say the existence of an agreement or not is a jurisdictional question as opposed to a merits question. And if it's a merits question, you go back to the district court. The district court has already said there's no agreement, so I guess you would just make a Rule 56 motion and you would win the case, right? Your Honor, there is a nuance here that is critical, which is that for this case to proceed in any other way, the court has to accept jurisdiction that it doesn't have and impose on Ruth Riley a contractual obligation that doesn't exist. And so the central transport case that the funds cite – I don't follow that. Why would we be imposing a contractual obligation that doesn't exist? If I said, look, they're bringing a breach of contract case. We have jurisdiction over a breach of contract case. We remand. It doesn't look like there needs to be any more discovery done on this question because it doesn't look like there's a contract here. You can go ahead and enter judgment. For you, you win. Why would that be any different, really, functionally for you? Well, because the funds are asking for discovery to compel an audit. They're asking for rights that relate to the audit, and that also is a contractual right. Right, but there wouldn't be a contract, so they wouldn't have the contract theory, so you would prevail. And if they have an audit theory under the Section 9 theory of payment, then I assume they have to go to the NORB with that, right? Yes, that's correct. Okay. Thank you. I see that you're out of time. I think we have your argument in hand. Any rebuttal? No. We do think it's correct that this case really shouldn't get to the jurisdictional issue because we believe the advanced lightweight situation does not apply. As we briefed out, if you see the court made a determination as to whether or not there is a contract, we believe the court clearly erred to the extent it found that there was no contract by relying on this four-month period of time when everybody was mistaken as to the fundamental nature of the relationship between the parties. That's really all that court looked at. It looked at those four months when everyone thought that there was no obligation to bargain and how people acted during that period, and based on that. But if you thought there was a contract, you would have accepted the payments. I'm totally confused by that. The funds did accept the payments. After the statutory theory became apparent, right? Right. And then payments came in, and then new obligations, new contractual obligations were created when Ruth Riley signed off on these reports that expressly promised after the expiration to comply with the collective bargaining agreement fringe benefit fund provisions and comply with the trust agreement provisions relating to collections and audits. So those are independent contractual promises after everybody learned about the 9A status. And when you look at that in conjunction with the fact that contributions and benefit rights are accruing and ERISA is there to make sure that people get their benefits and to make it easier for funds to collect, in light of all that, the court erred in its factual finding that there was no mutual assent. We believe there clearly was. Those executed certifications are sufficient by themselves, and that it's just factually inappropriate to focus solely on the four-month period when everyone was under a mutual mistake of really fact and law as to the nature of the situation. If that mistake had never occurred, the contributions would have come in and they would have been paid, and none of that would have happened. But for that mistake during that period, there wouldn't be any issue here. There'd be nothing for the court to look at and point at and say there's no mutual assent. So based solely on this admitted acknowledged mutual mistake by everyone involved, the lower court said, found, well, because of that, there's no contract. But that was a mistake. It shouldn't be considered. And when it's not taken into consideration, you have the same as any other run-of-the-mill Sixth Circuit fund collection case like this, which allows the action to proceed in the district court under ERISA, under the Funds Powers to Collect. Further? I have nothing further. Thank you very much. Thank you, Your Honors. The case is submitted. And when the clerk has read it, the next case may be called.